PbARSoh, J.
 

 On the 11th of October, 1851, the plaintiff executed to the defendant Davis, a deed for lot Ho. 5, in the town of Shelbyville, with warranty, in consideration whereof, Davis gave to the plaintiff two promissory notes, one for $29,'73, payable twelve months after date, the other for $66,-47, payable two years after date. At the time of this transaction, the plaintiff owned lot Ho. 6, but did not own lot Ho. 5, and the deed for the latter, instead of the former, was made by
 
 ordstalee.
 

 On the 12th of October, 1851, Davis executed to the defendant Durham, a deed for lot Ho. 5, in consideration of the sum of $80, as recited in the deed, of which $25 was cash, and the balance a credit on a store account. In Hovember, 1851, Davis executed to plaintiff, a mortgage-deed for lot Ho. 6, to secure the payment of his two notes, which was duly registered in April, 1852; this deed is dated 11th October, 1851, but was ante-dated, to correspond with plaintiff’s deed to Davis. On the 30th of January, 1852, plaintiff executed to Davis a deed for lot Ho. 6; it recites a consideration of $96,20, and was given in substitution for the deed to lot Ho. 5, which, it was then discovered, had been made by mistake, and nothing was, in fact, paid, except the two promissory notes. On the 3rd of December, 1852, Davis executed to Durham a deed for lot Ho. 6; it recites a consideration of $96, but nothing was, in fact,-paid, except what had been paid for the consideration of the first deed.
 

 The plaintiff alleges that it was a part of the agreement between himself and Davis, in the contract of sale, that Davis was, at the time the deed was executed, to secure the' pur
 
 *467
 
 chase-money by executing a mortgage for the lot; and that Bordly, the other defendant, who drew the deed and the notes, commenced drawing a mortgage, hut did not finish it, pretending that he did not know the form, and thereupon, it was agreed that the whole matter should stand over until they could get some one who did know the form; but that, being intoxicated, (which may account for the mistake as to the Ho. of the lot,) he let Davis take the deed, and he took Davis’ notes, with the understanding that the papers should have no force or effect until the mortgage was executed, so that the whole agreement might go into effect at the same time. He also alleges that Durham took the deed from Davis, with notice that Davis was to make a mortgage, before the deed of plaintiff should have effect; and he insists, that after the mistake had been remedied by his deed to Davis, and Davis’ mortgage to him, and Davis’ deed to Durham, for the proper lot, Ho. 6, that Durham ought, in conscience, to have surrendered up the two deeds for lot Ho. 5, and agreed to have them cancelled. On the contrary, he alleges, Durham refuses to cancel the deeds, and has taken possession of lot Ho. 5, as well as of lot Ho. 6, with an intention, when he is evicted by the owner of lot Ho. 5, to bring suit against him on his warranty in the deed to Davis for that lot. The prayer is to have the deed cancelled.
 

 The defendant Davis denies that it was a part of the agreement that he was to execute a mortgage to secure the purchase-money. He admits that he had no property, and was in debt; in fact, he says, that the day after he got the deed from the plaintiff, he heard that one of his creditors intended to have his lot levied on and sold, and for that reason he sold to the defendant Durham; but he positively denies that he intended to commit a fraud upon the plaintiff.
 

 The defendant Durham admits that Davis was insolvent; hut he says, when he found that Davis had a deed for a lot which he then supposed was the lot which had belonged to plaintiff, he concluded to save his debt by advancing to Davis $25 in cash, and giving him credit for the balance. He denies that
 
 *468
 
 Davis was to secure the payment of the purchase-money to plaintiff, by a mortgage, to take effect when the deed was executed by the plaintiff; at all events, he avers, that if such were the fact, he had no notice of it when he took the deed from Davis; and he insists, that having innocently acquired a legal right, under the deed, by which he can avail himself of the plaintiff’s warranty, if he is evicted from lot Ho. 6, his equity being equal to that of the plaintiff, this Court should let the law prevail.
 

 The defendant Bordly disclaims all interest in the matter ; says he drew the writings, as the friend of both parties, without compensation; that he heard nothing of a mortgage. He admits that Davis “ owns no property; but he has a good trade; is a young man, and able to work.”
 

 We
 
 are satisfied, from the proofs, that it was a part of the contract, that Davis should, at the time the deed of the plaintiff was executed, make a mortgage, so as to secure the purchase-money ; and that it was a surprise upon the plaintiff, amounting to a direct fraud, for Davis to take the deed, without, at the same time, executing the mortgage. Plaintiff knew that Davis had no property, and was in debt, and under these circumstances, for him (plaintiff) to agree to make a deed' to Davis, and take his notes at
 
 one and two yea/rs
 
 credit, without a stipulation for a mortgage, would be conclusive proof that he was too drunk to know what he- was doing.
 

 Prom the proofs and circumstances, there is some ground to suppose-that Durham had reason to believe that Davis was to have executed the mortgage; but it maybe that, he was under the-impression that the plaintiff had taken some - other security for the-purchase-money ; and-the proof does not fuh ly justify a declaration of the fact that he knew that there was to be a mortgage ; although we must say, he stands in a questionable shape in respect to this allegation; and high morality would forbid his insisting upon,a,legal right to-take.advanr tage of a mistake on the part of the- plaintiff,, and a. fraud on the part of his co-defendant, Davis.
 

 It is a well-settled doctrince of this Court, — "Where t-lie
 
 *469
 
 equity is equal, the law prevails and" the - question is, has Durham an equal equity-with the-plaintiff, so that this Court cannot interfere with-his lfegab rights-in regard'to the deed for lot No-. 5?
 

 If there liad'been no mistake, and' the fii-st deed had heen properly-made for lbt No.,6, and'dlie plaintiff had allowed Davis to take it, with the understanding that it was to he of no effect until tlie mortgage was executed to secure the purchase-money according to the contract of sale, and Davis had, in fraud of this agreement, on-the next day, executed a deed to Durham.; the latter, having acquired the legal title, would not have been-preventedffrom availing himself of it, to save himself from Toss by the fraud of Davis; the question being, whether he or tlie plaintiff must lose by that fraud; for the doctrine that a vendor has a lien for the purchase-money, although it still'has the sanction of the Courts in England, is not acted on here.
 

 After the mistake was discovered, the plaintiff, by executing a deed to.Dav-is for the right lot, did as much as he could to correct it, and:carry out the original agreement. As between the plaintiff and Davis, the effect of this was to transfer-the notes-of Davis, from the deed for lot No., 5', and make them the consideration for the deed for lot No., 6. This left the former without any consideration-,., and imposed on Davis an obligation to cause it to be surrendered, so as to relieve tire plaintiff from, any liability under it. If he were not able to db so, of course, he could not. in common honesty, take benefit of the equity of redemption in lot No. 6, which he had acquired, under the latter deed.
 

 Mad-Durham been content to stand upon the deed for lot Not 5, his rights would not have been affected by what had been done by plaintiff and Davis; his equity would have remained unimpaired, and being prior to the equity of the plaintiff, there would have been no ground for interfering with his legal right. But he did not choose to do so; he takes from Davis a deed for lot No. 6 ; this he could not honestly do, without agreeing to surrender the deed for lot No. 5 ; for,
 
 *470
 
 otherwise, he makes himself
 
 particeps crirmnis
 
 with Davis, in putting in use the deed for lot Ho. 6. The effect of it was, that Durham acquired the equity of redemption; and to give the deed a consideration, it was necessary to transfer to it, the consideration which had been paid for lot Ho. 5 ; otherwise Durham would acquire rights to both the lots, for one and the same consideration. This left the deed to Durham for lot Ho.
 
 5,
 
 without consideration, and so impairs his equity, that it is not equal to that of the plaintiff. He cannot pretend that when,
 
 for his own gain,
 
 he induced Davis to attempt this second fraud, he was ignorant of the plaintiff’s prior equity; and the rule then is,
 
 qui prior est in
 
 tempore,
 
 potior est in jure.
 
 “There is no one quality so well wove in warp and woof, but there is some flaw in it. I have known a brave man flee a shepherd’s cur, and your cunning, worldly-seeking man doth oft-times weave his web so fine,
 
 as to ensnare himself?
 

 The plaintiff is entitled to a decree against Davis and Durham. The bill must be dismissed as to- Bordly; but without costs, because of the unfairness of his answer.
 

 Per Curiam. Decree accordingly.